UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO JUAREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R. ROCAMORA, et al.,<br><br>　　　　Defendants. | Case No. 12-cv-02800-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Roberto Juarez claims that medical staff at Soledad State Prison provided constitutionally inadequate medical care for his injured wrist in violation of 42 U.S.C. § 1983. Juarez's burden with respect to these claims is significant: he must show that the defendants were deliberately indifferent to his serious medical needs, establishing both that the course of his treatment was medically unacceptable and that it was pursued in conscious disregard of an excessive risk to his health. Negligence is not enough. Having provided Juarez with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc), defendants move for summary judgment (Docket No. 59). While some facts may be in dispute, they are not material to the essential issue of whether defendants were deliberately indifferent to Juarez's serious medical needs. They were not. Defendants' motion for summary judgment is GRANTED.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

The factual allegations given below are undisputed unless specifically noted otherwise. Juarez, an inmate at Soledad State Prison, alleges that (A) De Luna, a nurse,

(B) Rocamora, a nurse, (C) Estamo, a nurse, and (D) Sepulveda, a doctor, were deliberately indifferent to a wrist he injured during a softball game on June 6, 2011. As of June 20th, Juarez was able to play basketball despite the pain. (Pl.'s Opp. ("Opp."), Pl.'s Decl., Ex. C at 13.) X-rays taken on July 5, 2011 "revealed no acute bone injury," but rather a "small avulsion," or chip fracture. (*Id.*; Ex. D at 21.)

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or "the inadvertent failure to provide medical care, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). The mere fact

3

1  that a prisoner does not receive adequate medical care does not necessarily create a claim
2  for "deliberate indifference" to serious medical needs for purposes of imposing liability
3  under 42 U.S.C. Section 1983. *Id.* at 105-06.  Mere negligence or "the inadvertent failure
4  to provide medical care" will not sustain a Section 1983 claim.  *Id*. at 105.

### A.  De Luna

On the day he injured his wrist, Juarez visited the emergency room (also known as the Triage Treatment Area) of the north medical clinic, where he was examined by De Luna, a registered nurse. (Defs.' Mot. for Summ. J. ("MSJ")[1], De Luna Decl. ¶¶ 7-8.) De Luna noted that he did not present a medical emergency, informed him there was no physician at the clinic at that time, and advised him to complete a 7362 health care services request form, which he did. (*Id.*)  At the clinic at that time, physicians were available on an on-call basis to treat "medically necessary emergency" cases. (*Id.*)  Juarez alleges that he told De Luna that he believed his wrist was broken. (Am. Compl. ¶ 5.)  According to Juarez, De Luna denied his requests for ice, a splint, and x-rays, even though his wrist was "swollen, black and blue" and he was in extreme pain. (*Id.*)  This June 6th meeting was the only contact Juarez had with De Luna. (MSJ, De Luna Decl. ¶ 10.)

Summary judgment will be granted in De Luna's favor.  The undisputed facts surrounding his contact with Juarez do not show a genuine dispute of material fact that De Luna was deliberately indifferent.  With no physician available, De Luna conducted a reasonable emergency nursing assessment.  During this assessment, he determined that Juarez did not have a medical emergency, and referred him for further medical treatment by advising him to complete a 7362 request.  That request was granted two days later on June 8th.

Under Juarez's facts, De Luna's actions do not show deliberate indifference.  De Luna's denial of his requests to provide him with ice and a splint indicate only a difference

---

[1] Defendants filed one MSJ on their behalf, and each defendant (excepting De Luna) filed a separate MSJ on his or her behalf.  "MSJ" in this order refers to the MSJ filed on behalf of all defendants.

of opinion between a prisoner patient and medical staff and is insufficient to sustain a Section 1983 cause of action. *Toguchi*, 391 F.3d at 1038.  Neither De Luna nor Juarez knew that his wrist was fractured, as it had not been x-rayed, though both certainly knew it had been injured.  Swelling and pain would normally be seen in a just-injured wrist.  It was not unreasonable for De Luna to assume that this fresh injury did not present a medical emergency.  He was assessing patients for emergency situations while no doctor was present.  Under Juarez's allegations, De Luna's actions constituted at most negligence or gross negligence, *Farmer*, 511 U.S. 825, 835–36 & n.4, or "the inadvertent failure to provide medical care," none of which are actionable under section 1983, *Toguchi*, 391 F.3d at 1038.  Juarez has not provided any evidence that could support a claim that De Luna's treatment was "medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk to his health." *Id.*

### B. Rocamora

On June 8th, Juarez was examined by Rocamora, a nurse, who was following up on his June 6th 7362 request.  According to Juarez, his wrist was entirely immobile and had visible bruising.  He told Rocamora that his wrist, which was yellow, black and blue, was fractured (he told her he had heard a "loud cracking sound" when he slid into second base) and that he was in extreme pain which prevented him from sleeping.  (Am. Compl. ¶¶ 7-8.)  He alleges that Rocamora provided no treatment or diagnosis, did not refer him to a doctor, and denied his requests for ice, a splint or x-rays, saying that there was nothing in stock to give him.  (*Id.* ¶¶ 10-12.)  A fellow inmate, S.A. Leggett, asserts that Juarez returned from this appointment without any bandage or ice.  (Opp., Ex. I, Leggett Decl.)

Rocamora states that on June 8th she assessed Juarez.  (MSJ, Rocamora Decl. ¶ 7.) His vital signs were normal, he was alert and oriented, was not in acute distress, could move his finger, and had limited wrist movement.  (*Id.* ¶ 9.)  She noted that he had been seen on June 6th in the prison's triage area, treated per nursing protocol, and that he was allergic to ibuprofen.  (*Id.*)  According to a document Juarez submitted, she gave him an ACE wrap to support his injured wrist, referred him for a routine evaluation by a physician

5

1  within two weeks, and gave him acetaminophen and ice to treat the pain.  (Opp., Pl.'s
2  Decl., Ex. A at 1.)
3　　　　On June 29th, Juarez's primary care physician, Dr. Kalisher, ordered x-rays to be
4  taken of Juarez's left wrist, but the x-rays were not taken until July 5th because the x-ray
5  machine was broken.  (MSJ, Rocamora Decl. ¶ 10.)  On July 1, Juarez completed a 7362
6  form stating that he was still waiting to have the x-rays taken.  (*Id.*)  On July 5, Rocamora
7  received the 7362 form and called the x-ray department to follow up.  (*Id.*)  The
8  department informed Rocamora that Juarez had been x-rayed earlier that day.  (*Id.*)
9　　　　On July 18, Juarez completed another 7362 form stating he had still not seen
10 Kalisher regarding the x-ray results and asking for a better wrist support.  (*Id.* ¶ 11.)
11 Rocamora received the form on July 18 and referred Juarez to medical unit scheduler to
12 make an appointment with Kalisher.  (*Id.*)
13　　　　Juarez's assertions that Rocamora provided no treatment are contradicted by his
14 own assertions and by the record.  First, his assertion that Rocamora did not refer him to a
15 physician is contradicted by a Health Care Services Form ("HCSF") Juarez submitted as
16 an exhibit.  (Opp., Pl.'s Decl., Ex. A at 1.)  He asserts that Rocamora failed to fill out the
17 form so that he could see his primary care physician on a specific date.  (*Id.*, Pl.'s Decl. at
18 19.)  However, the form shows that Rocamora checked off the box that referred Juarez to a
19 routine appointment with a physician within 14 days.  (*Id.*, Ex. A at 1.)  Second, the record
20 contradicts his assertion that she provided no pain medication.  He admits that he was
21 prescribed medication to which he was allergic.  (Opp., Pl.'s Decl. at 19.)  On the same
22 HCSF, Rocamora indicated that Juarez was allergic to ibuprofen and that he should
23 continue taking acetaminophen, which, according to the records Juarez submitted, was last
24 dispensed on June 8, 2011, the day he saw Rocamora, which indicates that she did provide
25 some treatment.  (*Id.*, Pl.'s Decl., Ex. C at 9.)  There is nothing to support Juarez's
26 assertion that he was allergic to this drug, which he had been taking since at least April
27 2011.  (*Id.*)
28

1   Juarez further alleges that Rocamora refused to schedule an appointment for him to
2   see Kalisher and that he had to file a health care appeal form 602 to see him because of
3   Rocamora's refusal.  (Am. Compl. ¶ 14.)  The undisputed facts do not support Juarez's
4   allegation.  First, as discussed above, the evidence shows that Rocamora did schedule a
5   doctor's appointment for Juarez.  Though it may not have been the doctor he preferred,
6   Rocamora's referring him to a doctor cannot plausibly be called "medically unacceptable
7   under the circumstances." *Toguchi*, 391 F.3d at 1038.  Second, Juarez's 602 appeal was
8   filed on June 7, the day <u>before</u> he saw Rocamora.[2]  (Opp., Pl.'s Decl., Ex. B at 3, 4.)

Juarez's claims cannot survive summary judgment.  Evidence provided by Juarez shows that Rocamora did schedule him to see a physician and recommended that he continue taking acetaminophen.  Although he may not have received the treatment he wanted, it is undisputed that Rocamora provided reasonable and timely treatment in response to his medical condition.  Also, if, as Juarez alleges, she lacked what he asked for, Rocamora cannot be held liable for failing to provide such items.

Juarez has not provided any evidence that could support a claim that Rocamora's treatment was "medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk to his health." *Toguchi*, 391 F.3d at 1038.  Defendants' motion for summary judgment in favor of Rocamora is GRANTED.

**C. Estamo**

Juarez claims that on June 28, 2011, he was also interviewed by defendant Estamo, a nurse, on behalf of Dr. Sepulveda regarding his 602 appeal.  (Am. Compl. ¶ 16.)  He alleges that Estamo was deliberately indifferent in diagnosing his wrist injury as non-urgent and not broken and ignored his requests for ice, x-rays, and to see his primary care physician Kalisher.  (*Id.* ¶¶ 17-20.)  A fellow inmate, Kenneth W. Hughes, asserts that "in the month of June 2011" Juarez told him that he had seen Estamos on an unspecified day.  (Opp., Pl.'s Decl., Ex. I, Hughes Decl. at 125.)

---

[2] In the later stages of his 602 appeal, Juarez does describe his examination by Rocamora on June 8th.

7

1   Estamo asserts that she could not have interviewed Juarez on June 28th because on
2   June 24th she went on maternity leave. (MSJ, Estamo's Decl. ¶¶ 4-5, 9.) She asserted this
3   also in response to Juarez's interrogatories. (Opp., Pl.'s Decl., Ex. K at 136.) It is more
4   than likely that Juarez confused Estamo with another nurse, Wall, who also interviewed
5   Juarez regarding his 602 appeal on June 28th, the same day he alleges he met Estamo.
6   (*Id.*, Ex. C at 10.) Estamo's assertion is supported by the fact that none of the prison's 602
7   appeal records submitted by Juarez bear Estamo's name.

8   Juarez has not shown evidence precluding summary judgment. The absence of
9   Estamo's name on relevant documents and Juarez having met another nurse on the same
10  day regarding the same matter contradict his assertion that Estamo was responsible for the
11  actions giving rise to his claim. Also, Hughes's declaration is insufficient because he
12  failed to provide the exact day he heard Juarez say he had seen Estamo. Because there is
13  no evidence of Estamo's involvement with Juarez's medical care or subsequent 602
14  appeals, there is no genuine issue of material fact that she acted with deliberate
15  indifference or conscious disregard of an excessive risk to Juarez's health. Also, even if
16  Estamo had met with Juarez, he has not shown evidence precluding summary judgment.
17  Her role, like Wall's, was to interview Juarez regarding his 602 appeal, not to provide
18  treatment. (Opp., Juarez Decl., Ex. B at 6; Ex. C at 10.) Accordingly, the motion for
19  summary judgment as to Estamo is GRANTED.

20  **D.    Sepulveda**

21  Juarez alleges that Dr. Sepulveda, Chief Medical Officer ("CME") at Soledad, acted
22  with deliberate indifference in denying Juarez's requests for an MRI scan and consultation
23  with a hand surgeon. (Am. Compl. ¶ 26.) However, the evidence submitted by Juarez
24  contradicts these factual assertions. The exhibits show that a Dr. Darrin Bright, not
25  Sepulveda, reviewed and finally denied all of Juarez's requests for consultation with his
26  primary care physician and for consultations with a hand surgeon. (Opp., Pl.'s Decl., Ex.
27  E at 29 and 33.)

28

Sepulveda's only personal involvement with Juarez's treatment as CME was in reviewing Juarez's second-level 602 appeal requesting to see a physician.  (MSJ, Sepulveda Decl., Ex. B.)  Sepulveda granted that appeal by ordering continued follow-up care with Juarez's primary care physician.  The record shows that Sepulveda acted appropriately with regard to Juarez's injury and there is no additional evidence of his involvement showing that he acted with deliberate indifference.  Juarez has not shown a genuine dispute whether Sepulveda violated his constitutional rights.  Accordingly, defendants' motion for summary judgment will is GRANTED in favor of Sepulveda.

## CONCLUSION

Defendants' motion for summary judgment (Docket No. 59) is GRANTED in favor of all defendants as to all claims.  The Clerk shall enter judgment in favor of De Luna, Rocamora, Estamo, and Sepulveda, terminate Docket No. 59, and close the file.

**IT IS SO ORDERED.**

**Dated:** March 18, 2015



WILLIAM H. ORRICK
United States District Judge